IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03590-PAB-MEH

GIRARD OFFICES, LLC, a Colorado Limited Liability Company,

    Plaintiff,

v.

AMERICAN ZURICH INSURANCE COMPANY, an Illinois Corporation,

    Defendant.

_____

# ORDER
_____

This matter is before the Court on Defendant American Zurich Insurance Company's Motion for Partial Summary Judgment re: Interpretation of Policy [Docket No. 48] and Plaintiff's Motion for Partial Summary Judgment Pursuant to Rule 56 [Docket No. 49]. The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

## I. BACKGROUND[1]

Plaintiff owns real property located at 10020 E. Girard Ave, Denver, Colorado 80231 (the "Girard building"). Docket No. 49 at 2, ¶ 1. The Girard building was originally a three story office building of about 20,000 square feet. *Id.* at 3, ¶ 2. Plaintiff decided to develop the Girard building from an office building into an eighteen unit apartment building. *Id.*, ¶ 3. Plaintiff was the developer for the conversion. *Id.* Plaintiff applied to defendant American Zurich Insurance Company ("Zurich") for insurance coverage in relation to the conversion of the Girard building. *Id.*, ¶ 4. In conjunction

---

[1] The following facts are undisputed unless otherwise indicated.

with its application for insurance, plaintiff informed Zurich that the Girard building was being converted into apartments. *Id.*, ¶ 5. Defendant issued Policy No. ER10525840 (the "policy") to plaintiff effective June 19, 2017 to June 19, 2018. Docket No. 48 at 4, ¶ 1. The policy is a builders risk policy. Docket No. 49 at 3, ¶ 5. Zurich provided the entire policy to plaintiff as a single document at or near the start of the policy's term. *Id.*, ¶ 7. On or about January 11, 2018, the Girard building collapsed. *Id.* at 4, ¶ 9. Defendant agreed that the Girard building was a total loss and that plaintiff should demolish the building. *Id.*, ¶ 10. The parties have stipulated that the policy provided coverage for the premises located at 10020 E. Girard Avenue, Denver, Colorado. *Id.*, ¶ 11. The parties have also stipulated that the Girard building collapse was a covered event under the policy. *Id.*, ¶ 12.

On or about January 17, 2018, plaintiff made a claim under the policy arising from the collapse. Docket No. 48 at 8, ¶ 9. Zurich initiated an investigation. *Id.*, ¶ 10. On March 15, 2018, defendant advanced payment of $250,000 to plaintiff. *Id.* at ¶ 11. On September 27, 2018, defendant provided its initial evaluation of the claim and made a further payment of $316,902.83 for a total claim value of $566,902.83. *Id.*, ¶ 12. On April 12, 2019, plaintiff submitted a Proof of Loss for the Girard building, *id.* at 9, ¶ 13, which Zurich declined on April 23, 2019. *Id.*, ¶ 14. On September 4, 2019, defendant again outlined its position regarding the Remodeler Coverage Endorsement. *Id.*, ¶ 15. On December 18, 2019, plaintiff initiated this action. *Id.*, ¶ 16. Plaintiff's complaint brings four claims: (1) declaratory relief regarding plaintiff's rights under the policy, including a declaration of the applicable coverages, valuation conditions, and

2

limits of the policy; (2) breach of contract by Zurich for, *inter alia*, failing to pay benefits owed, failing to properly investigate and adjust the claim, increasing the damages and risks caused by the loss, and other wrongful acts; (3) violation of Colo. Rev. Stat. §§ 10-3-1115 and 1116 by Zurich's unreasonable delay and denial of benefits owed; and (4) bad faith breach of contract. Docket No. 1 at 6-9, ¶¶ 49-69. In March 2020, defendant supplemented its claim valuation and made a further payment to plaintiff of $190,619.89, for a total payment to plaintiff of $757,552.72. Docket No. 48 at 9, ¶ 17.

On August 5 and 6, 2021, the parties filed cross-motions for partial summary judgment. *See* Docket Nos. 48-49. Both motions ask the Court to determine, as a matter of law, which valuation provision in the policy applies to the collapse of the Girard building. Defendant argues that the valuation provision in the Remodeler Coverage endorsement applies, Docket No. 48 at 2, while plaintiff argues that the valuation provision in the Changes in Valuation Condition endorsement applies. Docket No. 49 at 2.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary

judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS[2]

The parties bring cross motions for partial summary judgment, each making competing legal arguments about which valuation provision applies based on the language of the policy. *See generally* Docket No. 48; Docket No. 49. Accordingly, resolving both motions requires deciding which provisions of the policy apply to plaintiff's claim.

In Colorado, "[t]he interpretation of an insurance contract is a question of law" to which traditional principles of contract interpretation apply. *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059 (Colo. 2005); *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). Thus, courts construing the terms of an insurance policy must "give effect to the intent and reasonable expectations of the parties." *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). This means affording words in the policy "their plain meaning according to common usage" and avoiding "strained constructions." *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990). Clauses or phrases should not be viewed in isolation; rather, a policy's meaning must be determined by examining the entire instrument. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). When policy language is ambiguous – i.e., when it is "reasonably susceptible on its face to more than one interpretation" upon evaluation of the policy as a whole, *State Farm Mut. Auto Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo. 1997) – it

---

[2] Because plaintiff's claims are based on state law, the Court applies Colorado law in resolving the motion. *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) ("In a case in which jurisdiction is founded on diversity, we apply the law of the forum state.").

must be "construed against the insurer . . . and in favor of the insured."[3]  *Id*. at 390.

### A.  Language of the Policy

The relevant portions of the policy state:

☒ **One-Shot (non-reporting form/single structure policy)**
☐ **1-4 Family Dwelling**   ☒ **Commercial Structure**
Property Location
10020 e girard ave
denver, CO 80231

**New Construction**
| | | |
|---|---|---|
| A) | Any one building or structure | $ |
| B) | All covered property at all locations (same as A unless otherwise noted) | $ |

**Remodeling**
| | | | |
|---|---|---|---|
| D) | Renovations and improvements | $ | 1,500,000 |
| E) | Existing buildings or structures | $ | 1,200,000 |
| F) | Rate | $ | 0.508 |
| G) | Premium | $ | 13,716.00 |
| H) | Total Taxes and Surcharges (per attached endorsement) | $ | 0.00 |
| I) | Total Fully Earned Policy Premium (minimum premium applicable) | $ | 13,716.00 |

## Builders Risk Coverage Form

. . . .

Coverage provided by Coverage Form is also subject to all Conditions in the Common Policy Conditions and Commercial Inland Marine Conditions forms.

**A. COVERAGE**
We will pay for direct physical loss or damage to Covered Property from any Covered Cause of Loss described in this Coverage Form.
   **1. Covered Property**, as used in the Coverage Form, means:

---

[3] Neither party claims ambiguity in the policy.  *See generally* Docket Nos. 48-49.

Property which has been installed, or is to be installed in any "commercial structure" or any one to four family dwelling, private garage or other structure that will be used to service the "commercial structure" or one to four family dwelling at the location which you have reported to us. This includes:

    **a.** Your property;

. . . .

**2. Property Not Covered**

Covered Property does not include:

    **a.** Existing buildings or structures to which an addition, alteration, improvement, or repair is being made, unless specifically endorsed;

. . . .

**3. Covered Cause Of Loss**

Covered Cause of Loss means risk of direct physical loss or damage to Covered Property, except those causes of loss listed in Section **B. EXCLUSIONS**.

**4. Additional Coverages**

    **a. Collapse**

    We will pay for direct physical loss or damage to Covered Property, caused by collapse of all or part of a building or structure insured under this Coverage Form, if the collapse is caused by one or more of the following:

        **(1)** Fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riots; civil commotion; vandalism; breakage of glass; falling objects; weight of snow, ice or sleet; or "water damage"; but only if the causes of loss are otherwise covered in this Coverage Form;

        **(2)** Hidden decay;

        **(3)** Hidden insect or vermin damage;

        **(4)** Weight of people or personal property;

        **(5)** Weight of rain that collects on a roof;

        **(6)** Use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

    This Additional Coverage does not increase the Limits of Insurance provided in the Coverage Form.

. . . .

**B. EXCLUSIONS**

. . . .

**2.** We will not pay for a loss or damage caused by or resulting from any of the following:

. . . .

    **f.** Collapse, except as provided in the **Collapse** Additional Coverage.

## Remodeler Coverage

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
    **BUILDERS RISK COVERAGE FORM**

The following is added to Section **A. COVERAGE**, Paragraph **4. Additional Coverages**

**Remodeler Coverage**
  **(1)** We will pay for loss or damage due to a Covered Cause of Loss to "existing buildings or structures" described in the Declarations to which "renovations and improvements" are being made.
  **(2)** Paragraph **a.** in **Property Not Covered** does not apply to this Additional Coverage.
  **(3)** The most we will pay under this Additional Coverage for loss or damage to "existing buildings or structures" is the amount shown in the Declarations for Existing Buildings Or Structures.  The most we will pay under this Additional Coverage for loss or damage to "renovations and improvements" is the amount shown in the Declarations for Renovations And Improvements.
  **(4)** The **Valuation** Condition, found anywhere in the policy, is replaced by the following with respect to this Additional Coverage:
  **Valuation**
  In the event of loss or damage, the value of the property will be determined as of the time of loss or damage.
    **(a)** The value of "existing buildings or structures" will be "actual cash value".
    **(b)** The value of the "renovations and improvements" will be the lesser of the cost to repair or the cost to replace with like kind and quality to the same point of completion that had been achieved immediately before the loss or damage.
. . . .
  **(6) Additional Definitions**
  The following Additional Definitions apply to this Additional Coverage
    **(a)** "Actual cash value" means the cost to repair or replace the lost or damaged Covered Property reduced by each of the following:
      **(i)** Physical deterioration;
      **(ii)** Depreciation;
      **(iii)** Obsolescence;
      **(iv)** Depletion;
      **(v)** Non-conformity to codes, regulations, or statutes; and
      **(vi)** The cost to reconstruct or remodel undamaged portions of property.  But in no event will "actual cash value" be more than the market value of the property excluding land as determined by the

> price which the property excluding land might be expected to realize prior to loss or damage if offered for sale in a fair market on the date of the loss or damage.
> **(b)** "Construction activity" means repair, replacement, or installation, including painting.
> **(c)** "Existing buildings or structures" means a building or structure that was constructed and standing prior to the inception of this policy and that will undergo renovation or rehabilitation.  "Existing buildings or structures" only includes those parts of standing buildings or structures that are intended to become a permanent part of buildings or structures during renovation or rehabilitation.  This does not include "renovations and improvements".
> **(d)** "Renovations and improvements" means your additions, alterations, improvements or repairs to the property location specified in the Declarations including materials and supplies, attachments, and fixtures which have been installed, or will be installed in the "existing buildings or structures".  This does not include "existing buildings or structures".
> **(e)** "Remodelers total estimated completed value" means the "actual cash value" of the "existing buildings or structures", plus the estimated cost of your "renovations and improvements" at the conclusion of the project.  This does not include "overhead" or "profit".

All other terms, conditions, provisions and exclusions of this policy remain the same.

. . . .

## Changes in Valuation Condition

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
    **BUILDERS RISK COVERAGE FORM**

The **Valuation** General Condition in Commercial Inland Marine Conditions is replaced by the following:
**Valuation**
In the event of loss or damage, the value of the property will be determined as of the time of the loss or damage.
> **1.** The value of the property will not be more than the amount necessary to replace the structure or repair the structure, whichever is less, to the same point of completion that had been achieved immediately before the loss or damage.
> **2.** If the loss or damage involves building materials which have not been installed, the value of the property will not be more than the amount necessary to

> replace the materials with like kind and quality. All other terms, conditions, provisions and exclusions of the policy remain the same.

Docket No. 49-1 at 5, 8-9, 13, 20-21, 26.

### B. Valuation Provision

The parties dispute whether the "Changes in Valuation Condition" endorsement or the valuation provision in the Remodeler Coverage endorsement apply to the collapsed building. Both parties agree that the collapse of the Girard building was a covered event under the policy; however, which provision provides the coverage has an impact on which valuation applies.

For the following reasons, the Court interprets the policy to state that the valuation provision in the Remodeler Coverage applies. Section A.2.a states that "Covered Property" does not include "[e]xisting buildings or structures to which an addition, alteration, improvement, or repair is being made, *unless specifically endorsed*." Docket No. 49-1 at 8 (emphasis added). Section A.4 provides additional coverages, one of which is collapse. *Id.* However, the collapse coverage is for "direct physical loss or damage to Covered Property." *Id.* at 9. Unless the existing building is specifically endorsed, there is no collapse coverage of the existing Girard building. The Remodeler Coverage is an endorsement to the policy that is added to Section A.4 Additional Coverages. *Id.* at 20. The Remodeler Coverage endorsement states that "Paragraph **a.** in **Property Not Covered** does not apply to this Additional Coverage," meaning that Section A.2.a's exclusion of existing structures that are being remodeled, unless specifically endorsed, does not apply. *See id*. The Remodeler Coverage thus provides coverage for a building under renovation. The Remodeler Coverage states:

10

>  **(4)** The **Valuation** Condition, found anywhere in the policy, is replaced by the following with respect to this Additional Coverage:
>  **Valuation**
>  In the event of loss or damage, the value of the property will be determined as of the time of loss or damage.
>  >  **(a)** The value of "existing buildings or structures" will be "actual cash value".
>  >  **(b)** The value of the "renovations and improvements" will be the lesser of the cost to repair or the cost to replace with like kind and quality to the same point of completion that had been achieved immediately before the loss or damage.

Docket No. 49-1 at 20. Because the Remodeler Coverage is the endorsement that provided coverage for the Girard building while it was under renovation, the valuation provision in the Remodeler Coverage is the one that applies to the collapse of the building.

Plaintiff argues that the listing of the Girard building in the declarations was sufficient to "specifically endorse" the building as the covered property. Docket No. 49 at 15-16. The Court disagrees. The declaration gives the property location and identifies the property as a commercial structure. However, that does not mean that the Girard building had coverage for renovations, given that the policy excludes existing buildings being renovated unless specifically endorsed. To address the lack of coverage for renovation of the Girard building, the Remodeler Coverage endorsement provides coverage for the building while it is being renovated. The declarations support this interpretation by listing "Remodeling" with the categories of "D) Renovations and improvements" and "E) Existing buildings or structures" with the corresponding policy limits. Docket No. 49-1 at 5. Additionally, the "Ordinance of Law – Direct Damage" in Section A.4.h Additional Coverages provides support for the Remodeler Coverage

being the endorsement. *Id.* at 10-11. It states that, if the policy is endorsed to provide coverage for existing buildings or structures or covers renovations on existing buildings or structures, then the Ordinance of Law – Direct Damage additional coverage does not apply. *Id.* at 11.

The Court finds that the valuation provision in the Remodeler Coverage applies and will accordingly grant defendant's motion for summary judgment.

### C.  Plaintiff's Remaining Arguments

Plaintiff makes three additional arguments in its motion for summary judgment for why the Changes in Valuation Condition should apply. The Court addresses each below.

#### 1.  Colo. Rev. Stat. § 13-20-808

Plaintiff argues that it is entitled to a broad interpretation of the policy in favor of the insured under Colo. Rev. Stat. § 13-20-808. Docket No. 49 at 9-12. Even assuming this statute applies to plaintiff, it does not alter the Court's determination. "[T]he statute does not create coverage where there is none to be had under the plain language of the policy." *HT Servs., LLC v. Western Heritage Ins. Co.*, 859 F. App'x 260, 263 (10th Cir. 2021) (unpublished) (citing Colo. Rev. Stat. § 13-20-808(3)(b)). The Remodeler Coverage valuation provision applies under the plain language of the policy; the application of Colo. Rev. Stat. § 13-20-808 would not change this.

#### 2.  Changes In Valuation Condition

Plaintiff argues that, even if the Remodeler Coverage endorsement is relevant, the Changes in Valuation Condition is the one that applies. Docket No. 49 at 13-16.

12

The policy contains an endorsement changing the valuation provision in the Builders Risk Coverage Form. Docket No. 49-1 at 26. Plaintiff argues that this valuation provision, rather than the one in the Remodeler Coverage, applies because the Remodeler Coverage valuation does not apply to collapse. Docket No. 49 at 13. The Court disagrees. The Remodeler Coverage states that "[t]he Valuation Condition, found anywhere in the policy, is replaced by the following with respect to this Additional Coverage: . . . ." Docket No. 49-1 at 20. As noted above, the Remodeler Coverage is the endorsement that brings the renovation under the ambit of the policy; thus, the valuation provision in the Remodeler Coverage is the one that applies here. Plaintiff argues that it is the additional coverage of collapse that covers the damage here, and that therefore the Changes in Valuation Condition applies. Docket No. 49 at 13. However, this would read the Remodeler Coverage out of the policy. The Girard building was excluded from coverage under the general terms of the policy, but was covered because of the Remodeler Coverage endorsement. Thus, the valuation provision in the Remodeler Coverage applies.

### 3. Application of Two Provisions

The policy states that, "[i]f two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage." Docket No. 49-1 at 31. Plaintiff argues that, therefore, if both the additional coverage of collapse and the Remodeler Coverage apply, then the claim must be valued at the actual amount of loss, which is the same as the Changes in Valuation

Condition.  Docket No. 49 at 8.  However, the Court finds that the Remodeler Coverage applies, not that two coverages apply, and accordingly rejects this argument.[4]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant American Zurich Insurance Company's Motion for Partial Summary Judgment Re: Interpretation of Policy [Docket No. 48] is **GRANTED**.  It is further

**ORDERED** Plaintiff's Motion for Partial Summary Judgment Pursuant to Rule 56 [Docket No. 49] is **DENIED**.

DATED March 30, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[4] Plaintiff's motion makes passing reference to the opinions of defendant's national general adjuster and his supervisor and plaintiff's public adjuster.  *See* Docket No. 49 at 8-9.  However, as both parties note, interpretation of the policy is a matter of law for the Court to decide.  *See Anglum*, 119 P.3d at 1059 ("The interpretation of an insurance contract is a question of law[.]"); Docket No. 48 at 10; Docket No. 49 at 4.