IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03590-PAB-MEH

GIRARD OFFICES, LLC, a Colorado Limited Liability Company,

      Plaintiff,

v.

AMERICAN ZURICH INSURANCE COMPANY, an Illinois Corporation,

      Defendant.
_____

**ORDER**
_____

      This matter comes before the Court on the five motions to exclude expert testimony filed by the parties. Docket Nos. 50, 53-56. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I. BACKGROUND**

      This case arises out of the collapse of a building in Denver, Colorado (the "Girard building"). Docket No. 113 at 2. Plaintiff, Girard Offices, LLC ("Girard"), decided to convert the Girard building from an office building into an eighteen unit apartment building and took out a builders risk insurance policy from defendant for the conversion. *Id.* at 1-2. The collapse of the building was a covered event under the policy, though the parties dispute how much plaintiff is owed under the policy. *Id.* at 2. Defendant, American Zurich Insurance Company ("Zurich"), has paid plaintiff $757,552.72 to date. *Id.* at 3. On December 18, 2019, plaintiff initiated this action. *Id.* at 2. Plaintiff's complaint brings four claims: (1) declaratory relief regarding plaintiff's rights under the

policy, including a declaration of the applicable coverages, valuation conditions, and limits of the policy; (2) breach of contract by Zurich for, *inter alia*, failing to pay benefits owed, failing to properly investigate and adjust the claim, increasing the damages and risks caused by the loss, and other wrongful acts; (3) violation of Colo. Rev. Stat. §§ 10-3-1115 and 1116 by Zurich's unreasonable delay and denial of benefits owed; and (4) bad faith breach of contract.  Docket No. 1 at 6-9, ¶¶ 49-69.

On March 30, 2022, the Court issued an order on the parties' cross-motions for summary judgment, granting defendant's motion and denying plaintiff's.  Docket No. 113 at 14.  The Court found that the valuation provision in the Remodeler Coverage portion of the policy applies to plaintiff's claim.  *Id.* at 12.

Defendant filed motions to exclude plaintiff experts Olie Jolstad, Bill McLoughlin, Brian Haden, and Adrian Filip, Docket Nos. 50, 53, 54, 55, and plaintiff filed a motion to exclude defense rebuttal expert Dale Frediani.  Docket No. 56.

## II.  LEGAL STANDARD

### A.  Rule 702

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to

give opinions in a particular subject area.  Rather, the Court must "perform[] a two-step analysis."  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  After determining whether the expert is qualified, the proffered opinions must be assessed for reliability.  *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

In ruling on a Rule 702 motion, the district court has a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"  *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93).  Where an expert witness relies on experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes).  When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes."  *Daubert*, 509 U.S. at 597.  It is the specific relationship between an expert's method, the

proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness's opinions must demonstrate that the process by which the witness derived his or her opinions is reliable. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Allstate Sweeping, LLC v. City & Cnty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011 WL 2173997, at *3 (D. Colo. June 2, 2011); the proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

Assuming the standard for reliability is met, the Court must also ensure that the proffered testimony will assist the trier of fact. *See Kumho Tire*, 526 U.S. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). "Relevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied

4

to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

Finally, Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### B.  Testimony of Experts in Bad Faith Insurance Cases

In some cases, such as insurance bad faith cases, expert witnesses are permitted to testify about relevant legal standards.  "[A]n expert's testimony is not *per se* inadmissible simply because it requires discussion of the law." *Amica Life Ins. Co. v. Wetz*, No. 15-cv-01161-WJM-CBS, 2017 WL 897839, at *3 (D. Colo. Mar. 7, 2020). "[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988).  Such testimony "is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function.  However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed." *Id.* at 809-10.  Testimony that "articulates the

ultimate principles of law governing the deliberations of the jury" is inadmissible.  *Id.* at 808.  While an expert may refer to the law in expressing his or her opinion, the expert "may not state legal conclusions drawn by applying the law to facts."  *A.E. ex rel. Evans v. Indep. Sch. Dist*. No. 25, 936 F.2d 472, 476 (10th Cir. 1991) (citations omitted).

An expert may testify as to insurance industry standards codified in Colorado and ones that are generally accepted within the Colorado insurance industry.  *See O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 928 (D. Colo. 2017) (permitting an insurance expert to offer his opinions on relevant industry standards but not permitting the expert to opine on whether the insurance company met any legal standard). Nevertheless, while an expert is permitted to testify as to insurance industry standards, and may testify that a party's conduct did not conform with those standards, he may not apply legal standards from caselaw or statutes to state an opinion that defendant's conduct actually violated caselaw or statutes.  An expert is not permitted to "state legal conclusions drawn by applying the law to facts," *A.E. ex rel. Evans*, 936 F.2d at 476, because "such ultimate conclusions would not be helpful to the jury and would improperly intrude on its fact-finding function."  *O'Sullivan*, 233 F. Supp. 3d at 929 (excluding opinions that an insurance company's conduct violated the law).  Therefore, an expert may not opine whether a party met its duties under applicable caselaw or violated various statutes.  He may, however, testify whether, in his opinion, a party's conduct conformed with specific insurance industry standards, including ones identified in those statutes, and he may compare those standards to specific factual instances of defendant's actions.  *See Dale v. Country Preferred Ins. Co.*, No.

19-cv-01991-PAB-SKC, 2021 WL 1172574, at *3 (D. Colo. Mar. 29, 2021); *see also O'Sullivan*, 233 F. Supp. 3d at 928 (ruling that expert could offer opinions whether defendant's conduct "differed, in factual terms, from the practices of other insurers" or from "relevant industry practices and standards," but could not opine about whether defendant's conduct "was unlawful or 'egregious'"); *Houston Speciality Ins. Co. v. Vaughn*, 2017 WL 11415011, at *3 (M.D. Fla. Apr. 13, 2017) (permitting an insurance expert to (1) "explain[] what she knows of insurance industry standards, (2) "explain[] the facts and evidence she reviewed in the case," and (3) "opin[e] on the ways she believes [the insurer's] conduct fell short of" those standards).  What an expert may not do is offer a cumulative summary of a party's actions to opine that a party's conduct either failed to meet all of the relevant industry standards, and therefore its conduct was unreasonable according to those standards, or was unreasonable as a matter of law. *See O'Sullivan*, 233 F. Supp. 3d at 929.

## III.  ANALYSIS

### A.  Olie Jolstad [Docket No. 50]

Defendant moves to strike five opinions of Olie Jolstad.[1]  The Court addresses each of them in turn.

---

[1] Defendant's motion moves to strike a sixth opinion regarding a Zurich underwriting document.  Docket No. 50 at 2.  However, plaintiff withdrew this opinion in its response to the motion.  Docket No. 75 at 10-11.  Accordingly, the Court will deny this portion of the motion as moot.

***1.   Zurich and Girard established the agreed value of the building prior to the inception of the policy.  The agreed value was understood by Girard to mean the fair market value (FMV).  Zurich's claim adjustment demonstrates a strategy to circumvent the agreed value/FMV agreed upon at inception of the policy, effectively re-underwriting the FMV post-claim in order to deprive Girard the payment of benefits due under the builders risk policy.***

Defendant argues that Mr. Jolstad cannot testify to a "meeting of the minds" regarding the value of the building at $1,200,000 and does not identify the industry standard, custom, and practice that supports this conclusion.  Docket No. 50 at 6.

Mr. Jolstad's report states:

> Girard valued the building based on the agreed value/FMV (except land) at $1,200,000.  Zurich's underwriter(s) accepted and agreed upon the valuation when binding the risk, and as set forth on the Declarations Page under Remodeling (E) Existing building or structures $1,200,000.  Zurich also agreed and established that the Remodeling Renovations and Improvements (D) value was $1,500,000 ($2,700,000 total of completed value of the project).  The premium paid by Girard to Zurich for the builders risk coverage for the building and structure was $13,716.00.
>
> The FMV having been objectively established up front by Girard and Zurich eliminates valuation problems when claims occur.  Such is the custom and practice in the insurance industry that Zurich's claims handlers ignored.  Underwriting, having already established the common value, the loss valuation adjusting component(s) should then operate from the same baseline and fairness.

Docket No. 51 at 14-15 (footnote omitted).  Mr. Jolstad's opinion is mere *ipse dixit*.  He cites no case or industry standard for the opinion that the policy limit is the agreed upon value.  Defendant's underwriter commented that the $1.2 million policy limit for existing building or structures was "in line" for the property.  Docket No. 75 at 2; Docket No. 50 at 7; Docket No. 51 at 6.  A comment that the policy limit was "in line" for the building is not the equivalent to an agreement on value.  Mr. Jolstad's report states that it is "custom and practice" to establish the FMV "up front," *see* Docket No. 51 at 15, but provides no basis for this.  Mr. Jolstad cannot opine on what Zurich "understood" and

8

usurps the role of the jury by drawing conclusions on what the underwriter meant by the

policy limit being "in line" for the property.  The Court accordingly will grant this portion

of defendant's motion.

### 2.  Plaintiff's Reasonable Expectations

Defendant moves to strike the following opinions:

> The fundamental principle of insurance is to fulfill the reasonable
> expectations of the insured and the insurer.  Here, the reasonable
> expectations of Girard being:
> ● The agreed value (FMV) that Girard provided to Zurich and upon which
> Zurich based limits, coverage, and loss valuation represents the FMV of
> the building immediately prior to the loss on January 10, 2018.
> ● The reasonable expectation of Girard is that a total loss for a building
> with an amount described as the existing building and structure with a limit
> of $1,200,000 will be $1,200,000.
> ● The reasonable expectation for Girard is that a building so agreed on as
> to its FMV would not become a building with a FMV of $340,000 post-loss.
> ● The reasonable expectation for Girard is that when a valuation is over
> $800,000 below the next lowest FMV valuation, and additional valuations
> regarding ACV and RCV valuations are upwards from $2.2, the credibility
> and fairness of the low-ball $340,000 valuation upon which Zurich relies is
> implausible.
> ● The reasonable expectation for Girard is that a building with a total FMV
> of $2.7 million means $2.7 million.
> ● The reasonable expectation for Girard is that the Zurich's adjusters
> would communicate and operate openly, honestly, and fairly consistent
> with insurance industry custom, practice, and standards of good faith
> claims handling.

Docket No. 50 at 10-11 (citing Docket No. 51 at 18).  Defendant argues that Mr. Jolstad

has offered no underlying facts or evidence to support these conclusions.  Docket No.

87 at 5.  The Court agrees.  Mr. Jolstad does not identify where these opinions came

from, what experience they are based on, or why they are reasonable expectations.

The Court finds that Mr. Jolstad has not demonstrated that the process by which he

derived these opinions is reliable.  *See Crabbe*, 556 F. Supp. 2d at 1220.  As a result,

the Court does not need to address whether testimony about either Girard's or Zurich's "expectations" would have been appropriate under Rule 702 in any event.  Accordingly, the Court will exclude these opinions.

> ### 3.  Zurich has violated insurance industry customs and practices in the adjusting of Girard's claim by misrepresenting the operation of the builders risk policy at issue with regard to additional collapse coverage, change in valuation, and remodelers coverage.

Defendant argues that Mr. Jolstad should be prohibited from offering this opinion because it is an interpretation of the policy.  Docket No. 50 at 11.  Plaintiff responds that Mr. Jolstad's opinion is merely how an adjuster would adjust the claim in the context of the applicable insurance contract and industry norms.  Docket No. 75 at 7-8.  As a general matter, the Court agrees with Zurich that Mr. Jolstad's testimony about the policy inappropriately interprets the policy terms.  Moreover, the Court has interpreted the policy and found that the Remodeler Coverage valuation applies.  *See* Docket No. 113 at 10-12.  Mr. Jolstad's testimony about any industry norms that would warrant a different result is unhelpful to the jury because interpretation of the policy is a matter of law for the Court to decide.  *See USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059 (Colo. 2005) ("The interpretation of an insurance contract is a question of law[.]"). Accordingly, the Court will preclude Mr. Jolstad from offering this opinion.

> ### 4.  Dean's testimony also failed to consistently comply with the status updates regarding ongoing investigations provided under 5-1[-]14.  Once the insured submits a claim, Zurich is required to send status updates regarding their investigation and respond within a certain time frame to accept or reject proof of loss.  One key provision is to provide a status update every thirty-days. Zurich failed to provide such updates every thirty days.  Such conduct is a violation of insurance industry custom and practice and represents unreasonable delay with handling of the claim.

Defendant argues that Mr. Jolstad's interpretation of 3 Colo. Code Regs. § 702-

5:5-1-14 to require status updates every thirty days is wrong.  Docket No. 50 at 12.  The

regulation, entitled Penalties for Failure to Promptly Address Property and Casualty

First Party Claims, was adopted by the Colorado Commissioner of Insurance for the

purpose of describing "the procedure and circumstances under which penalties will be

imposed for failure to make timely decisions and/or payment on first party claims."  3

Colo. Code Regs. § 702-5:5-1-14 § 2.  The regulation "provides evidence of industry

standards, and therefore of the reasonableness of an insurer's conduct in any case, but

it is not conclusive of the statutory standard of reasonableness under § 10-3-1115."

*Stamey v. Nat'l Gen. Ins. Co.*, No. 15-cv-00560-WJM-MJW, 2016 WL 8540310, at *3

(D. Colo. Sept. 22, 2016); *see also Lopez v. United Fire & Cas. Co.*, 318 F. App'x 628,

634-35 (10th Cir. 2009) (unpublished) (using 3 Colo. Code. Regs. § 702-5 as factor in

establishing reasonableness of insurer's conduct in bad faith case).

The regulation requires an insurer to notify the insured of the reasons additional

time is needed for investigation every 30 days if the insurer has not paid the claim

within 60 days after the receipt of a valid and complete claim.  3 Colo. Code Regs.

§ 702-5:5-1-14 §§ 4.A.1, 4.A.3.  Any opinion by Mr. Jolstad that would require Zurich to

provide updates before the claim was valid and complete is accordingly barred.

However, the remainder of Mr. Jolstad's opinion is relevant to industry standards and

will not be barred.

### 5.  The insurance application submitted by Girard is a part of the Policy.

Defendant moves to exclude Mr. Jolstad's opinion that the application submitted

by Girard is part of the policy.  Docket No. 50 at 12-13.  In his deposition,[2] Mr. Jolstad

stated that it is an industry custom or practice for the application to become part of the

insurance policy.  Docket No. 50-2 at 3.  Mr. Jolstad testified that he relied on his

knowledge, skill, and expertise in coming to this conclusion and stated that insurance

treatises would also support this.  *Id.*  The policy in this case states:

> The Declarations, Supplemental Declarations, Common Policy
> Conditions, Commercial Inland Marine Conditions, Coverage Form(s),
> And Endorsement(s), if any, issued to and forming a part thereof,
> complete the Commercial Insurance Policy [ER10525840].

Docket No. 50-4 at 5.  Plaintiff cites an endorsement which states that the policy may

be comprised of, *inter alia*, the application.  Docket No. 75 at 9-10 (citing Docket No.

50-4 at 39).  This endorsement, however, does not state that the application is part of

the policy.  Additionally, Mr. Jolstad does not identify the "standard" he refers to or

which treatises would support his conclusion.  An "industry standard" is not how

insurers write policies.  Accordingly, Mr. Jolstad's testimony is inappropriate under Rule

702 and will be excluded.

### 6.  Conclusion

For the foregoing reasons, the Court will grant defendant's motion to exclude Mr.

Jolstad's opinions in part, deny the motion in part, and deny it as moot in part.  Mr.

Jolstad is precluded from testifying regarding the "agreed" value of the building,

plaintiff's six reasonable expectations, plaintiff's supposed violation of industry norms by

misrepresenting the operation of portions of the policy, an opinion that would require

---

[2] Zurich does not indicate whether plaintiff complied with Fed. R. Civ. P. 26(e)(2)
in regard to this deposition testimony.

Zurich to provide updates under 3 Colo. Code Regs. § 702-5:5-1-14 before the claim

was valid and complete, and that plaintiff's application was part of the policy.

## B.  Brian Haden [Docket No. 55]

Plaintiff retained Brian Haden as a damages expert in this case.  Docket No. 72

at 2.  Defendant moves to exclude five categories of Mr. Haden's opinions.  Docket No.

55.

### 1.  Interpretations of the Policy

Defendant argues that the following opinions are interpretations of the policy and

should be excluded:

● Opinion 1: The value of the building at the time of the loss to be
$3,263,229.27 RCV and ACV of $2,522,458.31.  The value of the building
at today's pricing an apartment building is $3,478,66982.19 RCV and ACV
of $2,773,324.10.
● Opinion 2: The policy has a combined policy limit of $2.7 million plus an
additional coverage for debris removal of $50,000.
● Opinion 5: The 4th line on the Remodeler endorsement is critical . . . the
Remodeler endorsement is ADDED to Section A coverage paragraph 4
Additional coverage.
● Opinion 6: The collapse coverage is an additional coverage located
under Section A coverage paragraph 4 Additional coverages.
● Opinion 7: The Changes in Valuation Condition is an additional
endorsement which modifies the policy and is critical to the valuation of
the loss.
● Opinion 8: It is without question the Changes in Valuation endorsement
attaches to the Commercial Inland Marine Conditions (CIMC).  It is also
without question the CIMC is a part of the body of the policy.  It is NOT an
endorsement. The CIMC provides additional conditions to the Common
Policy Conditions *and* applicable Additional condition in CIMC Forms.
● Opinion 9: There is nowhere in the main body of the policy nor in the
CIMC pages where this additional condition Changes in Valuation
Condition does not apply to the rest of the policy.
● Opinion 11: As a result in the delay in claims handling and payments
the potential loss of income is $451,440.00.

Docket No. 55 at 1-2, 7.

The Court will exclude the following opinions: opinion 5, opinion 7, opinion 8, and opinion 9. Mr. Haden's opinions about which portions of the policy are "critical" or apply to the rest of the policy invade the province of the Court and the jury.

The Court is unclear on the basis for opinion 1. Defendant represents that Mr. Haden's opinion "implicitly relies on" plaintiff's argument that the Changes in Valuation Condition applies. Docket No. 86 at 3-4. This aligns with the Haden report, and the Court assumes it to be true. To the extent Mr. Haden's opinion 1 is based on the Changes in Valuation Condition, it is excluded because it calculates damages based on a valuation provision the Court has held does not apply. *See* Docket No. 113 at 12 (finding that valuation provision in the Remodeler Coverage, not Changes in Valuation Condition, applies). However, to the extent that is not the case, Mr. Haden will be permitted to testify as to opinion 1.

The remaining opinions, however, are damages calculations based on valuation provisions of the policy or statements about where in the policy a certain provision is found. Defendant does not challenge Mr. Haden's actual calculations,[3] instead arguing that which valuation provision applies is a matter for the Court to decide. While that is true, Mr. Haden's opinions that, if a particular provision applies it would result in a certain amount of damages, does not opine on what valuation provision indeed applies. Accordingly, the Court will not exclude the other opinions.

### 2. *Reliability*

Defendant challenges the reliability of opinions 1, 11, 13, and 14. Docket No. 55

---

[3] Defendant separately challenges opinions 1 and 11 based on reliability. Docket No. 55 at 8-10.

at 8-10.

> ● Opinion 1: The value of the building at the time of the loss to be $3,263,229.27 RCV and ACV of $2,522,458.31.  The value of the building at today's pricing an apartment building is $3,478,66982.19 RCV and ACV of $2,773,324.10.
> ● Opinion 11: As a result in the delay in claims handling and payments the potential loss of income is $451,440.00.
> ● Opinion 13: As a result of the claims handling process, there was a significant delay in the insureds ability to begin the rebuilding process.
> ● Opinion 14: The policy clearly states it is to put back the building with 'Like Kind Quality'.  Because the insured was lacking proper funding to replace the building, she was forced to make changes to the new structure.

Docket No. 55 at 1-3.  Defendant argues that Mr. Haden's opinions regarding consequential damages are unsubstantiated and unreliable because he does not explain why these damages were foreseeable to the parties.  *Id.* at 8-10.  Mr. Haden is a damages expert.  He does not claim to be a foreseeability expert.  Whether the damages were foreseeable to the parties was not an issue plaintiff asked Mr. Haden to analyze or one that he is qualified to opine on.  Instead, Mr. Haden calculated the damages caused by certain conditions.  Whether these damages are properly considered consequential damages will be for the jury to decide.  The Court will deny this portion of the motion.

### 3.  *Opinions on Defendant's Intentions*

Defendant moves to exclude opinions 3 and 12:

> ● Opinion 3: The attempt to utilize a market value for a building is nothing more than an attempt to lower the claim payout.
> ● Opinion 12: All parties have determined the value of the building to be above the policy limits.

Docket No. 55 at 1, 3, 10-11.  Defendant argues that Mr. Haden is impermissibly opining on defendant's state of mind.  *Id.* at 10-11.  Plaintiff responds that Mr. Haden's

testimony will not be the exact same as his report or that defendant had a specific state of mind when handling this claim.  Docket No. 72 at 9-10.  The Court will exclude opinion 3 as impermissibly opining on the mental state of defendant.  However, reading opinion 12 in context, it is clear that Mr. Haden was making a factual observation regarding the valuations provided by the public adjuster and Envista Building consultant.  *See* Docket No. 55-1 at 4.  Mr. Haden was not attributing a state of mind to defendant.  However, his opinion goes beyond its basis when it states that "[a]ll parties have determined the value of the building to be above the policy limits."  *Id.*  Mr. Haden may testify that the public adjuster and Envista both valued the building above the policy limits, but not that "all parties" did so.  Accordingly, the Court will exclude opinion 3, and will exclude opinion 12 in part.

### 4.  Opinions 4, 10, and 14

Defendant moves to strike opinions 4, 10, and 14, arguing that they are unsupported and conclusory.  Docket No. 55 at 11.

> ● Opinion 4: Envista was not acting independent of Zurich and sought to set the value of the loss at a price which benefits Zurich.
> ● Opinion 10: The most accurate and relevant information related to the loss of income is that of the Clayton Report.
> ● Opinion 14: The policy clearly states it is to put back the building with 'Like Kind Quality'.  Because the insured was lacking proper funding to replace the building, she was forced to make changes to the new structure.

*Id.* at 2-3, 11.  Plaintiff argues that defendant cherry-picks portions of Mr. Haden's report and ignores the supporting factual evidence surrounding these opinions.  Docket No. 72 at 10-11.  Mr. Haden bases opinion 4 on the deposition of Steven Neyers, wherein Mr. Neyers "admits that he asked the Zurich staff adjuster if he would like him

16

to submit the value of the tenant improvements at $30 or $50 per square foot."  Docket No. 55-1 at 1.  This provides a sufficient basis for the opinion and the Court will not exclude opinion 4.  Mr. Haden provides no explanation for why the Clayton Report is the most accurate and relevant, instead relying on *ipse dixit*.  Accordingly, the Court will exclude opinion 10.  Mr. Haden supports opinion 14 by providing examples of ways that plaintiff made changes to the building.  *See id*. (stating that building is no longer clad in brick, ceiling height was reduced from ten to twelve feet to eight feet, and windows are smaller).  Accordingly, the Court will deny defendant's request to exclude opinion 14.

### 5.  Opinions 11 and 13

Defendant asks the Court to exclude opinions 11 and 13, arguing that they are impermissible legal conclusions.

● Opinion 11: As a result in the delay in claims handling and payments the potential loss of income is $451,440.00.
● Opinion 13: As a result of the claims handling process, there was a significant delay in the insureds ability to begin the rebuilding process.

Docket No. 55 at 2-3, 11-12.  Opinions 11 and 13 are Mr. Haden's opinions based on an assumption of unreasonable delay.  Mr. Haden is qualified to offer an opinion on the damages resulting from delay.  Defendants may contest that there was no delay, but that does not make Mr. Haden's damages opinion unreliable given his assumption.  Accordingly, the Court will deny this portion of the motion.

### 6.  Conclusion

The Court will grant defendant's motion in part and deny the motion in part.  Mr. Haden is precluded from offering the following opinions: opinion 1, to the extent it is based on the Changes in Valuation provision; opinion 3; opinion 5; opinion 7; opinion 8;

opinion 9, opinion 10; and opinion 12 in part.

### C.  Bill McLoughlin [Docket No. 54]

Defendant moves to exclude Bill McLouglin as an expert witness based on his financial interest in the case and the allegedly vague, unreliable, and unsupported nature of his conclusions.  Docket No. 54 at 5-10.  Additionally, defendant moves to exclude Mr. McLoughlin's opinions pertaining to his interpretation of the policy.[4]  *Id.* at 10-11.

#### 1.  *Contingency Fee Agreement*

Mr. McLoughlin is a public adjuster hired by plaintiff in connection with the collapse of the Girard building.  *See* Docket No. 54-12.  Pursuant to his contract with Girard, Mr. McLoughlin is entitled to 10% of the money resulting from a settlement or from successful litigation of plaintiff's claim.  *Id.* at 1, ¶ 2.  Defendant argues that this financial interest disqualifies Mr. McLoughlin from offering expert testimony.  Docket No. 54 at 5-6.  In response, plaintiff argues that Colo. Rev. Stat. § 10-2-417 permits public adjusters to enter into contingency fee agreements.  Docket No. 74 at 2-5.  Senior Judge Marcia Krieger recently confronted this issue and provided a thorough analysis of the caselaw in *Hiland Hills Townhouse Owners Ass'n v. Owners Ins. Co.*, No. 17-cv-01773-MSK-MEH, 2022 WL 2198262 (D. Colo. Feb. 8, 2022).  In *Hiland*, the plaintiff retained a public adjuster who was entitled to 10% of funds paid by the insurer pursuant

---

[4] Plaintiff endorsed Mr. McLoughlin as a non-retained expert under Rule 26(a)(2)(C).  Docket No. 74 at 5-6.  Defendant's reply argues that Mr. McLoughlin's disclosures are insufficient under Rule 26(a)(2)(C), but does not argue that Mr. McLoughlin was required to prepare a report under Rule 26(a)(2)(B) as a retained expert.  *See* Docket No. 88 at 4.  Accordingly, the Court considers Mr. McLoughlin to be a non-retained expert.

to a settlement or litigation on the claim related to hail damage.  2022 WL 2198262, at *1.  The defendant, an insurance company, argued that the public adjuster should be excluded from offering expert testimony because of his contingency fee agreement.  *Id.*  Judge Krieger noted a line of cases following *Tagatz v. Marquette University*, 861 F.2d 1040, 1042 (7th Cir. 1988), which hold that experts who are paid on a contingent basis are competent to testify and it is up to the jury to assess how an expert's financial interest bears upon his or her credibility.  *Id.* at *7.  In contrast, a line of cases derived from *Accrued Financial Services, Inc. v. Prime Retail, Inc*., 298 F.3d 291 (4th Cir. 2002), finds that public policy concerns warrant disqualification of an expert with a financial interest in the litigation.  *Id.* at *8.  Judge Krieger noted that the Tenth Circuit did not appear to have addressed the issue.  *Id.* at *9.  The Colorado Rules of Professional Conduct state that it is improper to pay a witness a contingent fee for testifying.  *Id.*  However, the Colorado Supreme Court has declined to adopt a *per se* rule allowing or excluding contingent witness testimony and instructs trial courts to apply the Colorado equivalent of Fed. R. Evid. 403 in resolving challenges to experts paid on a contingent basis.  *Id.* (citing *Murray v. Just in Case Bus. Lighthouse, LLC*, 374 P.3d 443 (Colo. 2016)).  Accordingly, Judge Krieger found that the proper course was to evaluate the issue under Rule 403.  *Id.* at *10-11.

Here, the parties have not addressed Rule 403.[5]  However, the Court has sufficient background before it to address the issues presented.  Defendant moves to strike the following opinions:

---

[5] Plaintiff's response includes two sentences regarding Rule 403, but does not address it in any substance.  *See* Docket No. 74 at 12.

● Opinion 1: the subject matter on which Mr. McLoughlin is expected to testify are his claim valuations of Plaintiff's claims and losses and his opinions in regard to the adjustment of the claim and the implementation of the insurance contract to the adjuster of the claim.
● Opinion 2: the Xactimate estimates provided by Mr. McLoughlin to the defendant.
● Opinion 3: the Proofs of Loss with supporting documents/exhibits dated April 1, 2019 and August 30, 2019.
● Opinion 4: Plaintiff's 1237-1238.
● Opinion 5: any amendments to the Proofs of Loss.
● Opinion 6: deposition testimony p. 246, 1. 1 –p. 247, 1. 15; p. 258, l. 1-19.
● Opinion 7: PAC 21042-21044.
● Opinion 8: PAC 21090-21114.
● Opinion 9: Plaintiff's 1083-1085.
● Opinion 10: Exhibit 14 from Brad Dean's deposition.
● Opinion 11: AZIC 3573-3579.
● Opinion 12: PAC 21042-21171.

Docket No. 54 at 1-2. Defendant attaches the documents comprising each opinion to the motion as exhibits. *See id.*; *see also* Docket Nos. 54-1 to 54-11. Opinion 1 is plaintiff's description of the subject matter of Mr. McLoughlin's anticipated testimony. Docket No. 54-1 at 1. The disclosure states that Mr. McLoughlin will testify as to his claim valuations and his opinions of the adjustment of the claim, *id.*, but does not say what these opinions are. Instead, the disclosure states that the summary of the opinions is contained in various documents. *Id.* These various documents are the opinions defendant seeks to exclude in opinions 2 through 12. The Court does not consider opinion 1 to be a true opinion, but rather appears to be a general overview of what Mr. McLoughlin's opinions pertain to. Accordingly, the Court will not strike opinion 1 under Rule 403. The Court next turns to the probative value of opinions 2 through 12.

Opinion 2 is Mr. McLoughlin's Xactimate estimate. *See* Docket No. 54-2 at 1. The probative value of opinion 2 is high, given that it represents the basis for plaintiff's

valuation of the claim.  The proofs of loss, opinion 3, are dated April 1, 2019 and August 30, 2019.  *See* Docket No. 54-3 at 5, 10.  These also have a substantial probative value.  The policy requires that the insured submit a proof of loss.  *See, e.g.*, Docket No. 49-1 at 31.  The proofs of loss contain plaintiff's valuation of the claim and opinions on coverage, which are relevant to proving plaintiff's claims in this case.

Opinion 4 consists of emails from Mr. McLoughlin sent on September 3, 2019 and November 14, 2019 regarding valuation and coverage.  *See* Docket No. 54-4 at 1-2.  Opinion 5 is "any amendments to the Proofs of Loss."  Docket No. 54-1 at 1; Docket No. 54 at 2.  Defendant indicates that no amendments were submitted, Docket No. 54 at 9, and the Court accordingly presumes that there are none.  Opinion 6 is Mr. McLoughlin's opinions from his March 26, 2021 deposition regarding the application of the policy to the collapse of the building.  *See* Docket No. 54-5 at 3-4.  Opinion 7 consists of an email from Mr. McLoughlin to Brian Rushlau and Bradley Dean[6] dated September 3, 2019 about Mr. McLoughlin's opinions on the coverages in the Zurich policy.  Docket No. 54-6 at 1-3.  Mr. McLoughlin then forwarded the email chain to Jerry Oliveri[7] on September 9, 2019.  *Id.* at 1.  Opinions 4, 6, and 7 are each pre-litigation opinions that are probative of plaintiff's position on valuation and coverage.

Opinion 8 appears to be Mr. McLoughlin's edits and explanations to the Zurich

---

[6] Mr. Dean is Zurich's adjuster for plaintiff's claim and Mr. Rushlau supervised the Zurich investigation and adjustment of plaintiff's claim.  Docket No. 94 at 11-12.

[7] Mr. Oliveri is a licensed public adjuster who works in Mr. McLoughlin's office and prepared the Xactimate estimates Mr. McLoughlin used.  *See* Docket No. 74-4 at 2-3.

insurance policy.  *See generally* Docket No. 54-7.[8]  This is probative of the basis for Mr.

McLoughlin's coverage opinions.  Opinion 9 is an email chain between Mr. Rushlau and

Mr. McLoughlin from August 24, 2019 and August 26, 2019 regarding Mr. McLoughlin's

opinions of the coverages from the policy.  Docket No. 54-8 at 1-3.  This is probative for

the same reasons as opinions 4, 6, and 7.

Opinion 10, which is exhibit 14 to Mr. Dean's deposition, is an annotated version

of the policy.  *See generally* Docket No. 54-9.  This is probative for the same reason as

opinion 8.  Opinion 11 is an April 12, 2019 email from Mr. McLoughlin to Mr. Dean

regarding Zurich's payment of $340,000 to date, Mr. McLoughlin's opinions on this "low

ball" valuation of the Girard building, and attaching a copy of the appraisal conducted

by Girard's certified commercial appraiser, David Clayton.  Docket No. 54-10 at 1-2.

Opinion 11 also includes the April 1, 2019 proof of loss, which is noted above as

opinion 3, within it.  *Id.* at 3-7.  Opinion 11 is probative of plaintiff's valuation position.

Opinion 12 is 130 pages, largely consisting of documents contained within the

other opinions.  *See, e.g.*, Docket No. 54-11 at 1-3 (September 3, 2019 email chain

contained within opinion 7).  The contents of pages 1-8 are contained within opinion 7

and opinion 3, the probative value of which have already been established above.

Pages 8-48 are simply a copy of the policy; it is not an opinion of Mr. McLoughlin and

has no probative value.  Pages 50-73 is opinion 8, which the Court has already found

---

[8] Based on Mr. McLoughlin's August 26, 2019 email to Mr. Rushlau, the Court
believes opinion 8 is the "fully integrated version of the Zurich Builders Risk Policy" that
Mr. McLoughlin indicates he prepared between August 15, 2019 and August 26, 2019.
*See* Docket No. 54-8 at 2.

probative.  Pages 74-96 are Mr. McLoughlin's "LKQ[9] Shell Cost Estimate," essentially an estimate of the cost to rebuild the building, and the contracts providing the basis for this valuation opinion.  The Court finds these pages probative of the basis for plaintiff's valuation position.  Pages 96-128 are an August 29, 2019 Xactimate estimate that the Court finds probative for valuation purposes.  Pages 128-130 detail the demolition and debris removal costs, which is also probative of valuation.  Accordingly, the Court finds each of the opinions, except for pages 8-48 of opinion 12, to have probative value.

The Court next considers the prejudice to defendant of letting Mr. McLoughlin testify as to these opinions.  Mr. McLoughlin will be paid based on the result of this litigation, meaning the higher plaintiff's recovery at trial, assuming there is a recovery, the more Mr. McLoughlin will be paid.  This creates an incentive for Mr. McLoughlin to overstate and exaggerate his positions in order to encourage the highest recovery possible.  Additionally, as noted above, to compensate a witness this way is improper.  *See Hiland*, 2022 WL 2198262, at *8-9.  Defendant supports its positions on valuation and coverage by offering the opinions of experts who are not compensated based on the result of the litigation.  This asymmetry of incentives leads to an unfair prejudice to defendant.  The question then is whether the danger of unfair prejudice substantially outweighs the probative value that the Court has found above.

The Court finds that the answer depends on the type of opinion offered.  Mr. McLoughlin's valuation opinions have high probative value, which is not substantially outweighed by the risk of unfair prejudice to defendant.  Plaintiff was required to submit

---

[9] The Court interprets this to mean "like kind and quality."

proofs of loss to defendant, which necessarily included valuation opinions.  Allowing Mr.

McLoughlin's testimony about his valuation opinions, made on behalf of plaintiff before

this case was filed, will not unduly prejudice defendant since they are part of the course

of defendant's consideration of plaintiff's claims.

However, the Court finds differently with respect to Mr. McLoughlin's opinions on

coverage.  Many of the opinions are Mr. McLoughlin's communications with defendant

regarding which provisions of the policy provide coverage.  *See, e.g.*, Docket No. 54-3

at 7.  Defendant challenges opinions 1, 3, 4, and 6-12 because they include

interpretation of the policy.  Docket No. 54 at 10-11.  Defendant acknowledges that Mr.

McLoughlin may be able to testify about his communications with Zurich about the

policy during the claims handling process, but argues that he cannot do so as an expert

witness.  *Id.*  Plaintiff responds that Mr. McLoughlin interpreted the policy for purposes

of adjusting the claim.  Docket No. 74 at 10-12.  Plaintiff cites *TBL Collectibles, Inc. v.

Owners Ins.* Co., 285 F. Supp. 3d 1170, 1191 (D. Colo. 2018), for the proposition that

public adjusters may express opinions on insurance industry standards and claims

handling.  *Id.* at 12.

"The interpretation of an insurance contract is a question of law."  *Anglum*, 119

P.3d at 1059.  To allow Mr. McLoughlin to interpret the policy for the jury would create

an unfair prejudice to defendant that substantially outweighs the probative value to

plaintiff, and would be legally improper.  However, Mr. McLoughlin's historical positions

on how the policy should be interpreted, which he presented to defendant throughout

the claims process, have significant probative value.  As a result, regarding pre-litigation

communications with defendant, Mr. McLoughlin will be permitted to testify about what

24

his interpretation of the policy was and why, and the manner in which he presented this information to defendant.  Mr. McLoughlin may not testify that his opinion is the correct interpretation of the policy.  With these restrictions, the unfair prejudice to defendant of admitting Mr. McLoughlin's coverage opinions will be minimized.  Accordingly, the Court finds that the danger of unfair prejudice will not substantially outweigh the probative value of Mr. McLoughlin's coverage opinions.

Each of Mr. McLoughlin's opinions 1-12 can be considered either a valuation or coverage opinion, and, based on the above analysis, the Court will not exclude them under Rule 403.  The exception is pages 8-48 of opinion 12, which has no probative value.

### 2.  *Rule 26(a)(2)(C)*

Defendant next challenges Mr. McLoughlin's disclosures as vague, unsubstantiated, and unreliable.  Docket No. 54 at 6-10.  Plaintiff responds that the disclosures comply with Fed. R. Civ. P. 26(a)(2)(C) for non-retained expert witnesses.  Docket No. 74 at 5-8.  Under Rule 26(a)(2)(C), for witnesses not required to provide a written report, the proponent of the expert must disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

*Hiland* addresses this issue.  There, the defendant argued that the plaintiff did not adequately disclose the public adjuster's opinion.  *Hiland*, 2022 WL 2198262, at *1-2.  The court stated:

an appropriate "summary" of the expert's opinions "need not outline each and

25

every fact to which the [ ] expert will testify," but the disclosure "should provide a brief account that states the main points of the entirety of the anticipated testimony."  A disclosure that simply states that the expert will testify "consistently with certain record documents" or one that refers generally to the expert's "observations" of a given subject does not suffice.

*Id.* at *2 (quoting *Roof Rehab, LLC v. Travelers Cas. Ins. Co.*, No. 20-cv-01863-RMR-NYW, 2021 WL 5579053, at *2-4 (D. Colo. Nov. 30, 2021)).  The court found that the disclosures provided failed to comply with Rule 26(a)(2)(C) because they did not summarize the opinions the public adjuster would testify to.  *Id.* at *3-4.  Additionally, the underlying documents the disclosure was based on were not presented to the court so the court could not assess "how readily" the expert's opinions could be derived from them.  *Id*.  In this case, plaintiff provided a disclosure and the underlying records to the Court.[10]  *See* Docket No. 54-1.  However, providing the underlying records is not sufficient.  *See Roof Rehab*, 2021 WL 5579053, at *5 (finding that disclosure stating that expert will testify consistent with his report, where 45-page report was provided to the court, was insufficient to comply with Rule 26).

Plaintiff's disclosure of Mr. McLoughlin's opinions states in relevant part:

The subject matter on which Mr. McLoughlin is expected to testify are his claim valuations of Plaintiff's claims and losses and his opinions in regard to the adjustment of the claim and the implementation of the insurance contract to the adjustment of the claim.

A summary of Mr. McLoughlin's opinions as referenced in his claims submissions and his depositions are as follows:

The Xactimate estimates provided by Mr. McLoughlin to the Defendant,

---

[10] This is Mr. McLoughlin's second supplemental expert disclosure.  Defendant complained to plaintiff that plaintiff's initial disclosure was too broad.  Docket No. 74 at 5-6.  In response, plaintiff provided a second disclosure narrowing the initial disclosure and providing additional references to the record.  *Id.* at 6.

the Proofs of Loss with supporting documents/Exhibits dated April 1, 2019, August 30, 2019, Plaintiff's 1237-1238, any amendments to the Proofs of Loss, 30(b)(6) deposition p. 246.1-p.247.15, id. p. 258.1-.19, id. p. 276.1-14, PAC 21042-21044, PAC 21090-21114, Plaintiff's 1083-1085, Exhibit 14 from the Deposition of Brad Dean, AZIC 3573-3579, and PAC 21042-21171.

Mr. McLoughlin's qualifications were previously provided as Bates numbers PED 184-187.  The facts, data, and basis of Mr. McLoughlin's opinions are his training, education, experience, observations, interviews of the Plaintiff and those items listed in his claims submissions.  In coming to his opinions, Mr. McLoughlin has utilized methods and information commonly, routinely, and reasonably utilized by professionals and persons in his field which comply with all the requirements of F.R.E. 702, 703, 704, and related case law.  Pursuant to Rule 703 of the Federal Rules of Evidence, Mr. McLoughlin may testify and render opinions based on evidence made available to him before or at the trial.

Docket No. 54-1 at 1-2.

"[C]itation to records with no clear indication of what sections will be used or how the facts or opinions will be framed and presented in testimony does not constitute a 'summary of the facts and opinions to which the witness is expected to testify' within the meaning and requirements of Rule 26(a)(2)(C)(ii)."  *A.R. by Pacetti v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, No. 12-cv-02197-RM-KLM, 2013 WL 5462277, at *3 (D. Colo. Sept. 30, 2013); *cf. Tuft v. Indem. Ins. Co. of N. Am.*, No. 19-cv-01827-REB-KLM, 2021 WL 1759638, at *3 (D. Colo. Feb. 18, 2021) (finding that the general statement that expert physicians would testify as to their "observations" of the plaintiff, i.e., "general references to material without any specification of what opinions will actually be offered," did not meet the "summary" requirement of Rule 26(a)(2)(C)(ii)).

Mr. McLoughlin's disclosure uses precisely the type of citations to the record without actually identifying or summarizing the facts that *A.R. by Pacetti* found

27

insufficient.  *See* 2013 WL 5462277, at *3 ("By citing Nicastle's files as a summary of facts, the defendant identifies a large body of detailed information and, thus, fails to provide anything approaching a brief account or statement of the main facts on which his experts will rely." (quoting *Nicastle v. Adams Cnty. Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1674954, at *1 (D. Colo. May 3, 2011)).  Plaintiff has failed to provide "a brief account that states the main points of the entirety of the anticipated testimony."  *Roof Rehab*, 2021 WL 5579053, at *3 (quoting *Vanderlaan v. Ameriprise Auto & Home Ins.*, No. 20-cv-00191-PAB-STV, 2021 WL 4441518, at *6 (D. Colo. Sept. 28, 2021)).  For instance, Mr. McLoughlin's disclosure refers to "PAC 21042-21171," Docket No. 54-1 at 1, which is 130 pages long and has many disparate documents within it.  *See generally* Docket No. 54-11.  This can hardly be considered a summary of Mr. McLoughlin's facts and opinions.

Because the Court finds that plaintiff's disclosures regarding each of Mr. McLoughlin's opinions do not comply with the requirements of Rule 26(a)(2)(C), the Court must determine whether to exclude these opinions under Fed. R. Civ. P. 37(c).  Pursuant to that rule, a party that fails to properly disclose an expert witness as required under Rule 26(a)(2) may not "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The party that fails to disclose has the burden of showing that its failure to comply with Rule 26(a)(2) was substantially justified or harmless.  *Skarda v. Johnson & Johnson*, 2014 WL 12792345, at *1 (D.N.M. June 30, 2014) (citing *Wilson v. Bradlees of New England Inc.*, 250 F.3d 10, 21 (1st Cir. 2001)).  Although "[t]he determination of whether a Rule 26(a) violation is justified or harmless is

28

entrusted to the broad discretion of the district court," four factors should guide a court's analysis: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

In terms of prejudice, defendant argues that it is unable to prepare properly for trial because plaintiff's inadequate disclosure consists of many statements and plaintiff has not indicated which statements it will offer as expert testimony.  Docket No. 88 at 4-5.  Plaintiff does not argue that its insufficient disclosures were substantially justified or harmless; instead, it argues that there was no Rule 26 violation.  "If the party attempting to introduce the witness does not make an argument regarding the alleged error's harmlessness, the party waives the issue."  *Andersen v. Foremost Ins. Co.*, 2022 WL 808051, at *3 (D. Utah Mar. 17, 2022) (citing *Woodworker's Supply*, 170 F.3d at 993 and *Healy-Petrik v. State Farm Fire & Cas. Co.*, 2022 WL 464220, at *8 (D. Utah Feb. 15, 2022)); *see also Contour PAK, Inc. v. Expedice, Inc*., No. 08-cv-01091-PAB-KMT, 2009 WL 2490138, at *1 (D. Colo. Aug. 14, 2009) (citing Rule 37(c)(1) and noting that the burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosures).

Trial is set for January 23, 2023.  Docket No. 114.  Discovery has been completed.  *See* Docket No. 94 at 20.  Defendant complained about plaintiff's inadequate disclosures regarding Mr. McLoughlin's opinions once before, Docket No. 74 at 5-6, but the disclosures are still inadequate.  As to prejudice, "[p]rejudice results

because the expert reports did not reveal what the experts will testify to at trial." *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 954 (10th Cir. 2002); *cf. Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4317112, at *14 (D. Colo. Sept. 23, 2021) (a Rule 26(a)(2)(B) violation resulted in prejudice where it hindered the party's ability to effectively prepare for trial). However, the risk of prejudice can be cured by requiring plaintiff to supplement Mr. McLoughlin's disclosure. *See Roof Rehab*, 2021 WL 5579053, at *7 (finding supplemental disclosures the appropriate remedy for a Rule 26(a)(2)(C) violation); *Vanderlaan*, 2021 WL 4441518, at *8 (same). There is sufficient time for plaintiff to cure the issue before trial, and the Court accordingly finds that factor three does not weigh in favor of exclusion. As to the fourth factor, the Court cannot conclude from the record that the inadequate disclosures were made in bad faith, as opposed to merely being the product of carelessness or superficiality. In any event, good faith alone does not suffice to overcome the other factors. *Jacobsen*, 287 F.3d at 954.

Considering all of the relevant factors, the court does not find that the "drastic sanction" of excluding evidence is warranted here. *See Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997); *see also Silver v. Shapiro*, No. 10-cv-01856-CMA-KLM, 2011 WL 1321798, at *4 (D. Colo. Apr. 5, 2011) (requiring plaintiff to revise insufficient expert disclosures, but declining to strike expert testimony, because "[w]ithout a finding of bad faith or gamesmanship . . . courts are loathe to invoke the strong medicine of precluding expert testimony"). Within 14 days of this order, plaintiff will be required to supplement its disclosures regarding those opinions that survive defendant's motion by summarizing each opinion and their factual basis.

30

*See* Fed. R. Civ. P. 26(a)(2)(C); *Vanderlaan*, 2021 WL 4441518, at *8 (requiring the same).

### 3. Methodology and Reliability

Defendant argues that the Court should exclude Mr. McLoughlin's opinions based on their lack of methodology and unreliability.  Docket No. 54 at 6-10.

A district court has "broad discretion" to decide "how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability."  *Dodge*, 328 F.3d at 1223; *Kumho Tire*, 526 U.S. at 153 ("[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.").  However, the Court's role as a gatekeeper does not extend to determining whether an expert is correct.  *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) ("a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions"); *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (a plaintiff "need not prove that the expert is undisputably correct or that the expert's theory is generally accepted in the scientific community" in order to establish the admissibility of the expert's opinion under Rule 702 (quotation omitted)); *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1055 (D. Colo. 2011) ("the court's 'gatekeeping' responsibilities under Rule 702 do not turn on the 'correctness' of an expert's opinions"); Wright et al., 29 *Fed. Prac. & Proc. Evid.* § 6262 (2d ed. 2022) ("The judge is charged with looking for objectively provable earmarks of reliability that can be evaluated by a non-expert.  The judge is not asked to decide if the expert's

opinions are, in fact, scientifically or technically correct since this is more than one trained in the law could be expected to do. Assuming the expert testimony has the earmarks of reliability, the evidence is then admitted and subjected to the kind of adversarial attack that facilitates the jury's central functions of deciding what weight to attribute to evidence and which witnesses to believe.").

As the proponent of Mr. McLoughlin's opinions, plaintiff bears the burden of establishing their admissibility. *See Conroy v. Vilsak*, 707 F.3d 1163, 1168 (10th Cir. 2013) ("The proponent of expert testimony bears the burden of showing that the testimony is admissible."). Defendant argues that Mr. McLoughlin did not identify the methodology he used to form any of his opinions. Docket No. 54 at 9. Plaintiff has two responses: (1) Mr. McLoughlin's valuation opinions, opinion 1, the Xactimate estimates, opinion 2, and the proofs of loss, opinion 3, contain their methodology, *see* Docket No. 74 at 8-10; and (2) opinions 4 and 6-12, which plaintiff describes as Mr. McLoughlin's opinions on the contract and Zurich's claim handling, are judgments based on experience. *Id.* at 10-13. The Court addresses the second set of opinions first.

Plaintiff argues that defendant is not complaining about a methodology issue because Mr. McLoughlin's opinions about how the claim should be adjusted are based on his experience. *Id.* at 10. Mr. McLoughlin reviewed the contract and the appraisals and came to conclusions about how the policy should be applied to the collapse of the Girard building. Although defendant is correct that plaintiff failed to reveal a methodology, it is not clear what methodology Mr. McLoughlin could have applied. *See Maude v. City of Phila.*, 507 F. Supp. 3d 593, 602-03 (E.D. Pa. 2020) (rejecting methodology challenge where expert reviewed confidentiality policy and other

32

documents and applied his expertise and knowledge of privacy practices in the relevant context to reach his conclusions because it was not clear what other methodology the expert could have used and expert employed same level of intellectual rigor to develop the opinions as he did in the field).  Accordingly, the Court rejects this portion of defendant's motion.

The Court now addresses opinions 1, 2, and 3.[11]  Opinion 2 is the Xactimate estimates.  *See* Docket No. 54-2.  Defendant argues that Mr. McLoughlin cannot testify as to opinion 2 because he did not prepare the Xactimate estimates.  Docket No. 54 at 7-8.  Mr. McLoughlin testified at his deposition that Mr. Oliveri, a licensed public adjuster, prepared the Xactimate estimates, but Mr. McLoughlin reviewed them.  Docket No. 74-4 at 3-4.  So long as Mr. McLoughlin oversaw the creation of the Xactimate estimates and is familiar with how they were created, he will be permitted to testify as to opinion 2.  Xactimate estimates were used by both sides in this case.  The fact that Mr. McLoughlin did not input the data himself does not preclude his ability to testify about them.  Opinion 3 is the proofs of loss Mr. McLoughlin prepared.  Docket No. 54-3. Defendant argues that proofs of loss should be excluded because Mr. McLoughlin did not prepare the Xactimate estimates that led to the valuation opinions.  Docket No. 88 at 6.  The Court has already rejected defendant's argument with respect to the Xactimate estimates and accordingly denies this portion of the motion.  Mr. McLoughlin's opinion 1 is "his claim valuations of Plaintiff's claims and losses and his opinions in regard to the adjustment of the claim and the implementation of the

---

[11] As noted above, opinion 5 is non-existent and the Court accordingly does not address it.

insurance contract to the adjuster of the claim."  Docket No. 54 at 1.  Plaintiff identifies

this as the "subject matter" of Mr. McLoughlin's testimony, and opinions 2-12 as his

actual opinions.  Docket No. 54-1 at 1.  To the extent opinion 1 can be considered an

opinion, which the Court doubts, it is about materials the Court has found admissible

and the Court will deny the motion with respect to it.[12]

### 4. Conclusion

The Court will exclude pages 8-48 of opinion 12.[13]  The Court will require plaintiff

to supplement its disclosure regarding Mr. McLoughlin's opinions within 14 days of the

entry of this order.  Mr. McLoughlin may testify to his valuation opinions.  Mr.

McLoughlin may also testify to his opinions on coverage to the extent they are historical

opinions presented to defendant during claim processing.  Accordingly, the Court will

not exclude opinions 1-12.  Defendant's motion to exclude Mr. McLoughlin will be

granted in part and denied in part.

### D.  Dale Frediani [Docket No. 56]

Plaintiff moves to exclude certain opinions of Dale Frediani, defendant's expert

retained to rebut plaintiff's bad faith experts.  Docket No. 56.  Mr. Frediani prepared an

expert report.  *See* Docket No. 57.  Plaintiff moves to exclude the following opinions:

> ● Opinion 1: In this case Mr. Dean's and Mr. Rushlau's interpretation of
> the Girard builders risk policy was more than reasonable, and well within
> industry custom and practice.

---

[12] Defendant challenges Mr. McLoughlin's opinions as improper interpretations of
the policy.  Docket No. 54 at 10-11.  The Court considered these arguments above in
the context of the Rule 403 analysis and accordingly does not re-address them.

[13] The Court notes that it is not excluding the policy in all forms, merely the policy
to the extent it is an "opinion" of Mr. McLoughlin in particular pages of discovery.

● Opinion 2: On the other hand, Mr. McLoughlin's interpretations of the Zurich builders risk provisions were tortious and nonsensical.

● Opinion 3: For the reasons expressed above, I also disagree with Mr. Jolstad's and Mr. Haden's interpretations, which are both contrary to the clear language of the policy and the property insurance principal of indemnity.

● Opinion 4: Mr. Frediani renders legal opinions concerning Colorado law as being that of a "broad evidence state" in terms of valuations and then goes on to quote a New Jersey case in that same paragraph.

● Opinion 5. Mr. Frediani provided his interpretation of the way the contract's remodeler coverage interplays with the collapse coverage.

● Opinion 6. Mr. Frediani opines that the Zurich's certified real estate appraisal's valuation was "generous" to Girard because the building had structural defects from the remodeling work. He then goes on to offer the opinion of what a hypothetical engineer would say.

● Opinion 7: Mr. Frediani offers a number of opinions as to how the remodeling work would impact the fair market value of the property. He offers the opinion that the over $360,000.00 of remodeling work that had been done to convert the building from an office building to an apartment building would have reduced the value of the building.

● Opinion 8: Mr. Frediani states in his report that Mr. Ward's value analysis was better supported, and he offers opinions as to what value Girard's certified real estate appraiser should have calculated.

*Id.* at 3-6. Plaintiff argues that the Court should exclude Mr. Frediani's opinions 1-5 because they impermissibly interpret the contract and opinions 6-8 because they impermissibly opine on other experts. *Id.* at 3-7.

Rule 26 permits the "admission of rebuttal expert testimony that is 'intended solely to contradict or rebut evidence on the same subject matter identified' by an initial expert witness." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134-PAB-KMT, 2016 WL 1597529, at *2 (D. Colo. Apr. 21, 2016) (quoting *TC Sys. Inc., v. Town of Colonie*, NY, 213 F. Supp. 2d 171, 179 (N.D.N.Y. 2002)). By contrast, "an affirmative expert serves to establish a party's case-in-chief." *Id.* at *3 (citing *Lead GHR Enters., Inc. v. Am. States Ins. Co.*, 2014 WL 1246499, at *3 (D.S.D. Mar. 25, 2014)).

A rebuttal expert must submit a report that includes "a showing of facts supporting the opposite conclusion of those at which the opposing party's experts arrived in their response reports." *Id.* (quoting *Bone Care Int'l, LLC v. Pentech Pharm., Inc.*, 2010 WL 3894444, *15 (N.D. Ill. Sep. 30, 2010) (citation omitted)). "[R]ebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *Int'l Bus. Machs. Corp. v. Fasco Indus., Inc.*, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995); *Boles v. United States*, 2015 WL 1508857, at *2 (M.D.N.C. Apr. 1, 2015).

### 1.  Opinions 1-5

Plaintiff argues that these opinions are interpretations of the contract which should be excluded.  Docket No. 56 at 3-5.  Plaintiff recognizes that this argument cuts against permitting opinions from Mr. Jolstad, but argues that Mr. Frediani's opinions are more "invasive" of the Court's role than Mr. Jolstad's.  *Id.* at 4-5.  In response, defendant argues that Mr. Frediani is merely fulfilling his role as a rebuttal witness, and that the preferred course of action is for the Court to preclude all witnesses from interpreting the policy.  Docket No. 69 at 1.

The Court has barred plaintiff's experts from interpreting the policy.  *See, e.g.*, *supra*, Section III.A.3 (prohibiting Mr. Jolstad from testifying that defendant violated industry norms by misrepresenting the operation of certain provisions); Section III.B.1. (prohibiting Mr. Haden from testifying that certain provisions of the contract are "critical" or apply to the rest of the policy).  Because Mr. Frediani's opinions are in response to plaintiff's experts' opinions that have been excluded they are no longer relevant and, in

addition inappropriately interpret the policy, the Court will exclude opinions 1, 2, 3, and 5.

In opinion 4, Mr. Frediani discusses that Colorado is a "[b]road [e]vidence" state for determining ACV and states why he disagrees with Mr. McLoughlin.  Docket No. 57 at 8.  Mr. Frediani states that market value is a factor to be considered in a broad evidence valuation "[i]n [his] experience," and cites to a case that approved of that method.  *See id*.  However, Mr. Frediani does not mention industry standards, and his opinion begs the question of whether valuation is within his area of expertise. Additionally, Mr. Frediani inappropriately adds a legal veneer to his opinion. Accordingly, the Court will exclude opinion 4.

### 2.  Opinions 6-8

Plaintiff seeks to exclude opinions 6-8 because Mr. Frediani is not qualified to offer them.  Docket No. 56 at 5-6.  Specifically, plaintiff argues that Mr. Frediani, an insurance adjuster, is neither a real estate appraiser nor an engineer, and thus cannot offer these opinions.  *Id.*

Although a witness' qualifications are not a sufficient basis for admitting expert testimony, *Crabbe*, 556 F. Supp. 2d at 1220, they constitute a threshold requirement which, if not met, requires the exclusion of expert opinions.  An expert must "stay[] within the reasonable confines of his subject area."  *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quotation marks and citation omitted); *see Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1093 (W.D. Okla. 2009) ("[T]he expert's qualifications must be both (i) adequate in a general, qualitative

sense (i.e., 'knowledge, skill, experience, training or education' as required by Rule 702) and (ii) specific to the matters he proposes to address as an expert.").

Mr. Frediani has been employed in the insurance industry since 1968 and acted as an appraiser under insurance policy appraisal clauses.  Docket No. 57 at 1-2. However, Mr. Frediani is not a certified real estate appraiser and did not conduct an appraisal in this case.  Defendant says that Mr. Frediani has "abundant experience in adjusting, supervising, managing and evaluating property claims" and, in the course of their employment, claims adjusters frequently assess appraisals.  Docket No. 69 at 8.

Plaintiff has failed to show that Mr. Frediani has any qualifications to be able to critique the appraisal of a certified real estate appraiser.  Accordingly, his conclusion in opinion 6 that the appraisal of Martin Ward, Zurich's certified real estate appraiser, was "generous" is beyond his qualifications.  Mr. Frediani similarly has no qualifications to opine on structural defects or what a hypothetical structural engineer would say.  Mr. Frediani's opinion 8, which states that Mr. Ward's analysis is better supported and offers opinions on what Girard's certified real estate appraiser should have calculated, is also beyond Mr. Frediani's qualifications.  Opinion 7 is Mr. Frediani's opinion on the impact of construction on the value of the building.  Plaintiff has failed to show why Mr. Frediani in unqualified to offer opinion 7, and the Court will not exclude it.[14]

---

[14] In its reply, plaintiff argues that Mr. Frediani does not provide his methodology. Docket No. 89 at 7.  However, arguments raised for the first time in a reply are waived. *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief." (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)).

### 3. Conclusion

The Court will grant plaintiff's motion in part.  Mr. Frediani is precluded from testifying to opinions 1-6 and 8.  The Court will not exclude opinion 7.

### E.  Adrian Filip [Docket No. 53]

Defendant moves to exclude all of Adrian Filip's opinions on the basis that he is "an improperly disclosed expert masquerading in lay witness clothing."  Docket No. 53 at 2.  Defendant additionally argues that Mr. Filip improperly interprets the policy.  *Id.* at 5-6.

Plaintiff disclosed Mr. Filip not as an expert witness, but as a person likely to have discoverable information.  Docket No. 53-1.  Mr. McLoughlin conferred with Mr. Filip about the coverage and disputes in this case and Mr. McLoughlin says that Mr. Filip provided a "sounding board" to Mr. McLoughlin.  Docket No. 73 at 2.  Mr. Filip prepared a "formalized copy" of his opinions on this matter after he realized he would likely be deposed.  Docket No. 53-2 at 1.  This "formalized copy" is an annotated version of portions of the policy where certain sections are highlighted, *see id.* at 2-8, and Mr. Filip's conclusions on the coverage provided by the policy.[15]  *Id.* at 9-12.  For instance, his coverage opinions state that the Remodeler Coverage does not apply to the loss and that Zurich "agreed" that the Existing Building's Market Value Excluding Land at the inception of the policy was $1,200,000 because that was the amount endorsed.  *Id.* at 12.  In general, the coverage opinions are Mr. Filip's opinions on how the policy works and provides coverage given the collapse of the Girard building.

---

[15] The Court refers to this document as Mr. Filip's "coverage opinions."

Plaintiff argues that it is intending to offer Mr. Filip as a fact, not expert, witness because he was involved in the handling of the claim.  Docket No. 73 at 3.  Plaintiff asserts that Mr. Filip's opinions support that defendant's post-litigation claims handling practices constituted bad faith because defendant rejected Mr. Filip's opinions and Mr. McLoughlin must testify about his communications with Mr. Filip in order to explain why he reached the opinions he reached.  *Id.* at 3-4.

The Court first turns to the question of whether Mr. Filip is a fact witness or whether he is an expert  witness.  With respect to expert witnesses, Fed. R. Civ. P. 26(a)(2)(A) states that, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  With respect to the opinions of a lay witness, Fed. R. Evid. 701 permits "a lay witness to testify in the form of opinions or inferences drawn from [his] observations when testimony in that form will be helpful to the trier of fact."  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988).  A lay witness's opinions are limited to those that are: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

The Tenth Circuit has held that testimony provided by a witness is expert testimony if the testimony is "based on technical or specialized knowledge," regardless of whether the witness is designated as an expert or fact witness.  *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011).  In *James River*, the Tenth Circuit held that the testimony offered by the witness was expert testimony

because it included opinions and judgments that required professional experience outside the scope of lay opinion; because the witness had professional experience and could better explain the relevant complex analysis than a person without such experience; because the witness's testimony relied on analysis and conclusions in a report created by an outside expert; and because the Federal Rules of Evidence considered the type of testimony proffered to be expert opinion. *See id.* at 1214-15.

Plaintiff does not make clear exactly how it intends to introduce Mr. Filip's opinions; at various times plaintiff's response mentions "Filip's testimony" as well as "Filip evidence." *See, e.g.*, Docket No. 73 at 3. The Court construe's plaintiff's position to be that it intends to have Mr. Filip testify that he communicated with Mr. McLoughlin, prepared a written summary of Mr. Filip's opinions, and this summary was provided to defendant. The Court additionally understands that plaintiff intends to introduce Mr. Filip's opinions through Mr. McLoughlin in order to explain why Mr. McLoughlin came to Mr. McLoughlin's opinions.

The subject matter of Mr. Filip's coverage opinions is clearly "scientific, technical, or other specialized knowledge" pursuant to Fed. R. Evid. 701(c) "that would not be understandable by an ordinary person." *See Water Pik, Inc. v. Med–Systems, Inc.*, No. 10-cv-01221-PAB-CBS, 2012 WL 27596, at *3 (D. Colo. Jan. 5, 2012). Mr. Filip's opinions do not explain simple analysis "that anyone with a grade-school education could understand." *Id.* (citing *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114 (10th Cir. 2005)). Instead, his opinions are an analysis outside the purview of an average person about how the policy applies to the facts of this case based on his experience in the insurance industry. Additionally, Mr. Filip's opinions fall under Fed. R. Evid. 702

41

because they rely on knowledge not within the ken of an ordinary person and derived

from his specialization in the industry.  *See, e.g., Innovatier, Inc. v. CardXX, Inc*., No.

08-cv-00273-PAB-KLM, 2011 WL 4536970, at *4 (D. Colo. Sept. 29, 2011) (finding that

"testimony falls within the scope of Rule 702 because such testimony necessarily

entails opinions and inferences derived from Mr. Singleton's specialized experience");

*Compania Administradora de Recuperacion de Activos Administradora de Fondos de*

*Inversion Sociedad Anonima v. Titan Int'l, Inc*., 533 F.3d 555, 561 (7th Cir. 2008)

(stating that the witness's "valuation attempt was based on his special experience in the

tire industry, not on his personal knowledge of the goods in question").

      The Court finds that Mr. Filip's opinions are expert opinions.  Mr. Filip, however,

has not been disclosed as an expert in this case, and Court will accordingly exclude his

opinions as summarized in Docket No. 53-2.[16]  *See Innovatier*, 2011 WL 4536970, at *4

 (excluding testimony of witness not endorsed as expert).  Whether there remains any

---

[16] Pursuant to Rule 37(c), a party who fails to disclose an expert witness as required under Rule 26(a) or (e) may not "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The party who fails to disclose has the burden of showing that its failure to comply with Rule 26(a)(2) was substantially justified or harmless.  *Skarda*, 2014 WL 12792345, at *1 (citing *Wilson*, 250 F.3d at 21). Although "[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court," *Woodworker's Supply*, 170 F.3d at 993, four factors should guide a court's analysis: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Id.*
      Plaintiff makes no argument regarding its failure to disclose Mr. Filip as an expert being substantially justified or harmless besides stating that there is no prejudice to defendant.  *See* Docket No. 73 at 4.  To the extent an analysis of Rule 37 and the *Woodworker's Supply* factors is required here, the Court finds that the error was neither substantially justified nor harmless and Mr. Filip is properly excluded.

relevancy to Mr. Filip's testimony regarding the claims handling process, given that his expert opinions are excluded, can be addressed through a motion in limine if defendant chooses.  Accordingly, the Court will grant defendant's motion in part and exclude Mr. Filip's opinions as summarized in Docket No. 53-2.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion to Strike Testimony From Olie Jolstad [Docket No. 50] is **GRANTED in part, DENIED in part,** and **DENIED as moot in part**. It is further

**ORDERED** that Defendant American Zurich Insurance Company's Motion to Exclude the Testimony of Adrian Filip Pursuant to Fed. R. Evid. 701 [Docket No. 53] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that Defendant's Motion to Strike Testimony from Bill McLoughlin as an Expert Witness [Docket No. 54] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that, within 14 days of this order, plaintiff shall supplement its disclosure for Mr. McLoughlin in compliance with Rule 26(a)(2)(C).  It is further

**ORDERED** that Defendant American Zurich Insurance Company's Motion to Exclude Certain Testimony of Plaintiff's Expert Brian Haden Pursuant to Fed. R. Evid. 702 [Docket No. 55] is **GRANTED in part** and **DENIED in part**.

**ORDERED** that Plaintiff's Motion to Preclude Certain Testimony of Defense Witness Dale Frediani [Docket No. 56] is **GRANTED in part** and **DENIED in part**.

DATED September 26, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge